UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Case No. 15bk03414 |
| Mesha E. Ware, | ) Chapter 13 |
| Debtor. | ) Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court arises out of the Objection of Santander Consumer USA Inc. to Confirmation of Debtor's Proposed Chapter 13 Plan (the "Objection"), filed by Santander Consumer USA Inc. ("Santander"), objecting to the chapter 13 plan of Mesha E. Ware (the "Debtor"). The Debtor asserts that surrender of a vehicle under section 1325(a)(5)(C) does not require her to physically deliver that vehicle when she is incapable of doing so through no fault of her own. Santander conversely argues that if the Debtor is unable to tender physical delivery, the Debtor's plan should not be confirmed.

For the reasons stated below, the Objection is overruled.

JURISDICTION

Federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). Federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in, or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code, or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Plan confirmation and objections thereto may arise in a case only under title 11 and are specified as core matters in which this court has jurisdiction to enter final orders. 28 U.S.C. § 157(b)(2)(B), (E) and (L). *In re Nicola*, 244 B.R. 795, 796 (Bankr. N.D. Ill. 2000) (Lefkow, J.). Such matters, thus, are within the court's constitutional authority. *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011).

Accordingly, final judgment is within the scope of the court's jurisdictional and constitutional authority.

PROCEDURAL HISTORY

In considering the Objection, the court has reviewed and considered the Objection [Dkt. No. 15], the attached exhibits submitted in conjunction therewith, and the following filed documents in the bankruptcy proceeding:

(1) Chapter 13 Plan (the "Plan") [Dkt. No. 6];

(2) Modified Chapter 13 Plan (the "Modified Plan") [Dkt. No. 20];

(3) Debtor's Response to Santander Consumer's Objection to Confirmation (the "Response") [Dkt. No. 27]; and

(4) Reply of Santander Consumer USA Inc. in Support of Its Objection to Confirmation (the "Reply") [Dkt. No. 29].

Though the foregoing items do not constitute an exhaustive list of the filings in the bankruptcy case, the court has taken judicial notice of the contents of the docket in these matters. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

BACKGROUND

On February 15, 2011, the Debtor purchased a 2006 Chevrolet Monte Carlo (the "Vehicle") financed by Santander pursuant to a retail installment contract. That contract called for an interest rate of 24.99% and equal monthly payments to Santander, each in the sum of $475.92.

Sometime in October 2012, the Vehicle was allegedly stolen from a Jewel-Osco parking lot located at 2203 W. 87th Street, Chicago, IL. The Debtor promptly filed a police report with the Chicago Police Department and an insurance claim with KAI Advantage Auto Insurance. In February 2013, for reasons not disclosed to the court, the insurance claim was denied. The Debtor informed Santander of the theft, the police report and the insurance claim's denial, but made no further payments to Santander or efforts to satisfy the debt owed. In the two years after the insurance claim was denied, Santander never attempted to contact the Debtor regarding the Vehicle nor did Santander commence any action in state court for the recovery of the Vehicle or for collection of the underlying debt. Santander did not file a claim with or pursue action against KAI Advantage Auto Insurance.

On February 2, 2015, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code. Neither the Debtor's schedules nor the Plan addressed Santander's secured claim or the Vehicle. Santander filed its secured claim as to the Vehicle in the amount of $18,806.67 and objected to confirmation of the Plan on the grounds that the Plan omitted its claim. The Debtor later filed the Modified Plan which contains the following language: "Debtor hereby surrenders the 2006 Chevrolet Monte Carlo to Santander Consumer Usa [sic] in full satisfaction of its secured claim."

Santander thereafter asserted the objection at bar, arguing that the Debtor cannot satisfy section 1325(a)(5)(C) by providing for surrender in the plan alone, as the Debtor is required to

physically deliver the Vehicle to Santander or pay Santander's allowed secured claim in full. The Debtor responds that "surrender" under section 1325(a)(5)(C) of the Bankruptcy Code does not require actual physical delivery of the Vehicle, therefore Santander's secured claim is satisfied simply by the surrender plan provision alone.

## THE MEANING OF "SURRENDER"

This is a case that turns on the meaning of the term "surrender" as used in the Bankruptcy Code.[1] As this court has previously stated:

> The Supreme Court has stated that "[t]he task of resolving [a] dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989); *In re Randle*, 358 B.R. 360, 362 (Bankr. N.D. Ill. 2006) (Doyle, J.), *aff'd*, No. 07C631, 2007 WL 2668727 (N.D. Ill. July 20, 2007). Where the language of the statute is unambiguous, no further inquiry is necessary or appropriate. *Sebelius v. Cloer*, 659 U.S. ___, ___, 133 S. Ct. 1886, 1895 (2013); *In re Vecera*, 430 B.R. 840, 842 (Bankr. S.D. Ind. 2010) (*citing Griffin v. Oceanic, Inc.*, 458 U.S. 564, 570 (1982)). Absent contrary definitions within the statute itself, words in a statute are presumed to have their "ordinary, contemporary, common meaning." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993) (*citing Perrin v. United States*, 444 U.S. 37, 42 (1979)).

*In re Walker*, 502 B.R. 324, 327 (Bankr. N.D. Ill. 2013) (Barnes, J.).

As in *Walker*, the inquiry thus begins with the statute itself. Section 1325 provides that "the court shall confirm a [chapter 13 reorganization] plan" if the plan, with respect to each allowed secured claim provided for by the plan, allows for "*surrender* [of] the property securing such claim to such holder." 11 U.S.C. § 1325(a)(5)(C) (emphasis added). Neither section 1325 specifically nor the Bankruptcy Code as a whole provides a definition, however, of the word "surrender."

Anticipating such an instance, the Seventh Circuit has stated:

We examine the statute according to the conventional rules of statutory construction: absent statutory definitions, we accord words and phrases their ordinary and natural meaning and avoid rendering them meaningless, redundant, or superfluous; we view words not in isolation but in the context of the terms that surround them; we likewise construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid construing statutes contrary to the clear intent of the statutory scheme.

---

[1] It is tempting to simply adopt Judge Schmetterer's well-reasoned opinion on this subject, as the facts are very close. *See Nuvell Credit Corporation v. Ross (In re Ross)*, 359 B.R. 690, 698 (Bankr. N.D. Ill. 2007) (Schmetterer, J.). The result would be the same. Because, however, the issues raised herein are frequently litigated in this court (and others), the court believes further analysis and discussion is warranted, to wit this Memorandum Decision.

3

*In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996).[2]

As a result, below, the court first looks to the "ordinary and natural meaning" of the term. The court then considers that statutory scheme within which the term is used, followed by some of the cases that have interpreted the term within that scheme. Following that, the court considers the use of alternative terms in the Bankruptcy Code, as that too can provide insight as to the meaning of the term.

A.  The Ordinary and Natural Meaning of "Surrender"

The Oxford English Dictionary provides a number of alternative definitions of the term "surrender." Of most interest is, perhaps, the following: "The giving up by a bankrupt of his property to his creditors or their assignees; also, his due appearance in the bankruptcy court for examination, as formerly required by the bankruptcy acts." OXFORD ENGLISH DICTIONARY (online version, November 2010), *http://www.oed.com* (last visited July 17, 2015).

This definition turns on the meaning of "property," which is an expansive concept under bankruptcy law. "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 86 S. Ct. 511, 515 (1966); *see also In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds*, *Law v. Siegel*, 134 S. Ct. 1188 (2014); *Mason v. Costello (In re Klarchek)*, 508 B.R. 386, 394-95 (Bankr. N.D. Ill. 2014) (Barnes, J.). As such, surrender of "property" could be accomplished under these definitions by surrendering rights alone.

By way of comparison, Black's Law Dictionary defines "surrender" as the "giving up of a right or claim; release; . . . [t]he delivery of an instrument so that the delivery releases the deliverer from all liability." BLACK'S LAW DICTIONARY 1673 (10th ed. 2014). Further, one prominent bankruptcy treatise has defined "surrender" as the "relinquishment of any rights in the collateral," including the right to possess the collateral. 8 *Collier on Bankruptcy* ¶ 1325.06[4] (15th ed. 2005).

These definitions suggest that surrender of property involves either or both a transfer of the property and of the rights thereto, but provide no guidance as to whether the physical delivery of that property is mandatory. As a result, the ordinary and natural meaning of the term "surrender" is not outcome determinative, and the court must look further.

B.  "Surrender" in the Bankruptcy Code

As noted above, the Seventh Circuit has provided guidance where the ordinary meaning is unclear, directing the court to "construe statutes in the context of the entire statutory scheme." *Merchants Grain*, 93 F.3d at 1353-54. The Supreme Court has provided similar guidance, stating that:

> Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. But [this] presumption . . . readily yields whenever there is

---

[2]   "As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879).

4

> such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.

*Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) (internal citation omitted).

We can, therefore, deepen our understanding of the requirements of "surrender" in section 1325(a)(5)(C) by examining the definition and interpretation of "surrender" used in other parts of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 362(h)(1)(A) ("the debtor will either surrender such personal property or retain it"); 11 U.S.C. § 365(d)(4)(A) ("the trustee shall immediately surrender that nonresidential real property to the lessor"); 11 U.S.C. § 521(a)(2)(A) (the debtor shall file "a statement of his intention with respect to the retention or surrender of such property"); 11 U.S.C. § 727(d)(2) (the debtor failed "to deliver or surrender such property to the trustee"); 11 U.S.C. § 1110(a)(3)(B) ("to be surrendered or returned by the debtor"); 11 U.S.C. § 1143 ("a plan requires presentment or surrender of a security"); 11 U.S.C. § 1225(a)(5)(C) ("the debtor surrenders the property securing such claim to such holder").[3] There is no significant variation between the uses of "surrender" so as to warrant the conclusion that they were employed in different parts of the Bankruptcy Code with different intent.

In examining the foregoing, one immediate and striking observation can be made: In three of the eight (seven preceding and section 1325) sections employing "surrender," it is used in opposition to a term that implies physical delivery. *See* 11 U.S.C. § 727(d)(2) ("deliver or surrender"); 11 U.S.C. § 1110(a)(3)(B) ("surrendered or returned"); 11 U.S.C. § 1143 ("presentment or surrender"). In two further uses, "surrender" is used in opposition to "retain" or "retention." *See* 11 U.S.C. § 362(h)(1)(A) ("surrender ... or retain"); 11 U.S.C. § 521(a)(2)(A) ("retention or surrender").

Giving every word of the statute meaning and avoiding making those words "ambiguous, extraneous, or redundant," *Merchants Grain*, 93 F.3d at 1353-54, the former examples imply "surrender" lacks the meaning of "delivery," "return" or "presentment." Otherwise, such words would be extraneous or redundant. Further, the latter examples would be meaningless if property could not be retained, unless of course that property may be surrendered.

What remains are sections 365 and 1225 of the Bankruptcy Code. As to section 362, surrender of nonresidential real property (*i.e.* leased commercial space) can mean either legal or physical surrender, or both, and the case law reflects that possibility. *In re Trak Auto Corp.*, 277 B.R. 655, 664 (Bankr. E.D. Va. 2002) (surrender accomplished by tendering possession or, if no possession, notifying landlord of surrender); *In re Ames Dept. Stores, Inc.*, 306 B.R. 43, 62 n. 68, 69 (Bankr. S.D.N.Y. 2004) (same). As to section 1225, the case law is sparse and unhelpful.

One of these sections has legislative history, however, and has given rise to case law that may be helpful in this regard. Stated more fully than above, section 521 provides that a debtor must, "within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, . . . file with the clerk a statement of his intention with

---

[3] Though surrender is only used once in the Bankruptcy Rules, that use is with respect to "surrender value" and is not of help in this analysis. *See* Fed. R. Bankr. P. 2015(a)(4).

respect to the retention or *surrender* of" any property of the estate securing debt listed in the debtor's schedules. 11 U.S.C. § 521(a)(2)(A) (emphasis added).

The legislative history of section 521 supports the interpretation of "surrender" as not always requiring physical delivery. The rationale in drafting section 521 was to ensure that secured creditors received early notice of a debtor's intentions with respect to the creditor's collateral:

> The automatic stay prohibits contact with the debtor and [before section 521] typically the secured creditor would know nothing about the fate of its collateral. The complaint was that the secured creditor would often incur the expense of filing an adversary proceeding to lift the stay only to learn that the debtor all along intended to surrender the property without a contest. The solution to the problem was to require an early disclosure of the debtor's intention with respect to the property and early performance.

*Home Owners Funding Corp. of Am. v. Belanger (In re Belanger)*, 118 B.R. 368, 370-71 (Bankr. E.D.N.C. 1990) (*citing Proposed Consumer Bankr. Improvements Act of 1981: Hearings Before the Subcomm. on Courts of the S. Comm. on the Judiciary*, 97th Cong., 1st Sess. J-97-11 (1981)), *aff'd*, 128 B.R. 142 (E.D.N.C.), *aff'd sub nom. In re Belanger*, 962 F.2d 345 (4th Cir. 1992). To combat this problem, Congress drafted section 521 to require debtors to disclose affirmatively their intent to surrender or retain collateral subject to secured claims. *In re Cornejo*, 342 B.R. 834, 836 (Bankr. M.D. Fla. 2005). "The legislative history does not support an interpretation of the term surrender as requiring a debtor to physically deliver actual possession of the collateral to the creditor's place of business when it is not feasible." *Id.*

In *Cornejo*, a debtor proposed to surrender his vehicle, which was in a repair shop and subject to a mechanic's lien. *Cornejo*, 342 B.R. at 835. The *Cornejo* court determined that requiring the debtor to physically deliver his vehicle to the creditor to effectuate section 521 surrender was not feasible or consistent with the debtor's right to a fresh start. *Id.* at 835-36 (noting that the record was void of any indication of fraud or bad faith).

Other courts have agreed. The United States Bankruptcy Court for the District of Columbia, for example, interpreted "surrender" in section 521 as not requiring physical delivery. *In re Kasper*, 309 B.R. 82, 91 (Bankr. D.D.C. 2004). Under section 521(a)(4), a debtor's duty to surrender property to the trustee for administration of the estate always exists. *Id.* at 90. A debtor complies with the requirements of surrender in 521(a)(4) by "allowing the trustee to administer the property" and "not [interfering] with the processes under the Bankruptcy Code for administration of the property as property of the estate." *Id.* at 91. The trustee may decide not sell the property so, despite the debtor's duty to surrender, the debtor need not always physically turn that property over to the trustee. *Id.* As such, the term "surrender" in other parts of the Bankruptcy Code cannot always require physical delivery. *Id.*

C.  Similar Terms in the Bankruptcy Code

A court may also contrast terms in the same act to decipher Congress' intent with respect to an undefined term. *Negusie v. Holder*, 555 U.S. 511, 529 (2009) ("[T]his Court [has] recognized that statutory interpretation is a multifaceted enterprise, ranging from a precise construction of statutory

6

language to a determination of what policy best effectuates statutory objectives."); *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 431 (2002) (contrasting statutory terms to determine Congress' intent).

Where the Bankruptcy Code requires a physical tender or transfer of possession, Congress elected to use the word "deliver." *E.g.*, 11 U.S.C. § 542(a) ("[A]n entity, other than a custodian, in possession, custody, or control . . . of property that the trustee may use, sell, or lease . . . shall *deliver* to the trustee, and account for, such property or the value of such property." (emphasis added)); *see also, e.g.*, 11 U.S.C. § 727(d)(2) (as discussed above, where both surrender and deliver are used together).

This use has been noted by the courts. "'Surrender' is not, within the bankruptcy context, synonymous with actual delivery, but is better seen as a version of constructive delivery (to the estate). The word 'delivery' is used in the Code to indicate actual delivery, which is only necessary in the event of actual administration by the trustee." *In re Lair*, 235 B.R. 1, 68 (Bankr. M.D. La. 1999). Delivery is the act of actually and physically tendering the collateral when such collateral is going to be administered, whereas surrender involves relinquishment of rights in the collateral.

There is another term used in the Bankruptcy Code that more expressly covers a relinquishment of rights. Section 544 states that "the trustee may *abandon* any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a) (emphasis added).

Abandonment involves a desertion, meaning that the debtor would simply "gives up all claims to the property, thus pitching it back into the public domain, where it is available for reappropriation." *Cerajeski v. Zoeller*, 735 F.3d 577, 581 (7th Cir. 2013). Abandonment and surrender are not synonymous, however. Abandonment is merely walking away from collateral and permitting any interested parties to satisfy those interests under nonbankruptcy law. *Id.* It is the unilateral act of the party abandoning.[4] The term "surrender," on the other hand, includes a "return and relinquishing of possession or control to the holder of a claim." *In re Robertson*, 72 B.R. 2, 4 (Bankr. D. Colo. 1985).

The inevitable conclusion is that surrender exists somewhere between delivery and abandonment. It is with this understanding that the court turns to the cases that have interpreted section 1325 in this regard.

## SECTION 1325 CASE LAW

The foregoing analysis makes clear that there is no easy resolution of what surrender means in the context of section 1325 or the Bankruptcy Code as a whole. It is not surprising, therefore, that the case law interpreting section 1325 in this regard is split between those cases that require physical delivery and those that do not. The court will examine each in turn.

---

[4] Though abandonment is unilateral, parties commonly ask the court to order abandonment to a third party. This confusion has, at points, made it into the case law. Nonetheless, the law is clear, abandonment effectuates no transfer, it is a disclaiming or forswearing of rights. *See Kasper*, 309 B.R. at 93-95 (discussing request to abandon to a specific party).

A.   <u>Surrender Requiring Physical Delivery under Section 1325</u>

There are, unfortunately, no Seventh Circuit cases clearly on point. The Fourth Circuit has, however, stated that at the most basic level surrender is a "relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of the property to another." *Internal Revenue Serv. v. White (In re White)*, 487 F.3d. 199, 205 (4th Cir. 2007) (discussing whether a debtors' proposal to surrender property on which the IRS could not collect constituted a surrender).

In *White*, the debtor had offered to surrender to the IRS property that was exempt from levy under section 6334 of the Internal Revenue Code (exempting from administrative levy "wearing apparel . . . necessary" for the taxpayer and his family and "fuel, provisions, furniture and personal effects [up to] $6,250 in value"). *Id.* at 206. Unless and until that exemption was resolved in the IRS's favor, however, that property would remain in the possession of the debtor after "surrendering" it. As the Fourth Circuit stated, "in the absence of actual delivery or turnover of the property to the IRS, the [debtors in *White* would] retain the very property that they 'surrendered' . . . ." *Id.* (internal citation omitted).

The *White* court determined that the proposed surrender was not effective because surrender requires complete relinquishment of rights in property, including the right of possession. *Id.* at 207. A debtor cannot retain any rights to the collateral after surrendering it, and the court concluded that the "retention of property that is legally insulated from collection is inconsistent with surrender." *Id.*

Put in other terms, the Fourth Circuit held in *White* that retention of property and surrender of that same property are mutually exclusive concepts under section 1325. The two cannot exist simultaneously. *Cf.* 11 U.S.C. § 362(h)(1)(A) ("surrender ... or retain"); 11 U.S.C. § 521(a)(2)(A) ("retention or surrender"). The *White* court therefore required physical delivery as a condition to section 1325's satisfaction.

The United States Bankruptcy Court for the District of Colorado has similarly held that a debtor's proposal to surrender a vehicle in the possession of the debtor's ex-spouse without physical delivery was not a sufficient surrender of property. *Robertson*, 72 B.R. at 4. In *Robertson*, the debtor told his creditors that he was surrendering his vehicle to them, that his ex-wife currently possessed the vehicle and that he did not know where she was. *Id.* at 3. The debtor essentially told his creditors that if they wanted the vehicle, they could go find it themselves. *Id.*

In *Robertson*, a state court had previously ordered the debtor to make payments on the vehicle and had awarded possession of the vehicle to the debtor's ex-wife. *Id.* Thus the debtor was precluded from abandoning the property. *Id.* (holding that the debtor may not "'abandon' an interest which [had] already been taken from him by the state court"). As the debtor was "not in a position to give up the security to the creditor by delivering it to the custody of that creditor," the bankruptcy court therefore held that "he [could not] comply with § 1325(a)(5)(C) of the Code." *Id.*

In short, the *Robertson* court held that the debtor could not surrender an interest that he did not have. Though *Robertson* clearly stands for the proposition that one must have some possessory rights to abandon them, its requirement of delivery is not necessarily useful outside of the facts that were before the court. *Robertson* does not explicitly address the issue of whether surrender under

section 1325(a)(5)(C) requires a debtor who actually has possessory rights to the collateral to deliver physical possession of the collateral to the creditor.

Another bankruptcy court has held that surrender requires a debtor to tender possession of the collateral. *Bank One Crawfordsville v. Smith (In re Smith)*, 207 B.R. 26, 30 (Bankr. N.D. Ga. 1997). In *Smith*, the debtor's plan calling for the debtor to retain the vehicle was confirmed. *Id.* at 28. The vehicle, however, was experiencing mechanical issues. The debtor did not notify her secured creditor about such issues before the confirmation order was entered. After the debtor concluded she could not afford to repair the vehicle, she sought to modify her confirmed plan to propose a "surrender" of the vehicle to the creditor. *Id.* at 28-29. The vehicle, however, was left at the repair shop and could not be obtained by the creditor absent satisfaction of the intervening and superseding repair and storage claims of the mechanic. *Id.* at 29.

The court held the "plan applies to claims as of its effective date." *Id.* at 30. As the debtor was in possession of the vehicle at that time and could have delivered it, the court further held that the proposed surrender required delivery. *Id.* In so doing, the court stated that:

> The operative phrase in section 1325(a)(5)(C) does not end with the word "property" but continues with the words "to such holder," making it plain that a debtor must at least tender possession or control of the collateral to the creditor, without regard to whether the creditor's consent is a further condition. Merely telling the creditor where it can find the collateral is not a surrender "to such holder."

*Id.*

In each of *White*, *Roberston* and *Smith*, while the court required delivery, it did so because either the debtor was capable of delivery and was refusing or had created the situation resulting in nondelivery. The courts also seemed to question the debtors' good faith under the circumstances at bar.

B.  <u>Surrender Not Requiring Physical Delivery under Section 1325</u>

Other courts have interpreted the right of surrender in section 1325 more liberally.

The Bankruptcy Court for the Eastern District of Arkansas, for example, found that the *Smith* case was limited to its peculiar circumstances. *See In re Alexander*, 225 B.R. 665, 666 (Bankr. E.D. Ark. 1998) ("*Smith* arises in the plan modification context and, indeed, the discussion limits its application to that context."). By contrast, the debtor in *Alexander* proposed to surrender a car to her creditor after her co-debtor had absconded with it. The whereabouts of the co-debtor and the collateral were unknown. *Id.*

The court in *Alexander* further emphasized that "there [was] an element of culpable behavior on the part of the *Smith* debtor that [was] not evident in [*Alexander*]." *Id.* As the court observed, in *Smith*, the debtor had delayed plan confirmation by failing to file timely a federal income tax return and then, "immediately after confirmation, ... virtually abandoned the vehicle at a repair shop, with attendant repair bills." *Id.*

9

The lack of culpable behavior or bad faith and the alternatives to relief available for the debtor and creditor seemed to sway the *Alexander* court, which stated that:

> The fact that [the debtor], through no fault of her own, cannot physically drive the vehicle to the creditor's place of business does not obviate surrender of the vehicle. Second, the creditor has a remedy as well as retention of its lien. Although its claim in the bankruptcy case is unsecured, [the creditor] retains its lien on the collateral as well as its right to pursue the [co-debtor].

*Id.* at 667 (stating that "any evidence of bad faith or fraud on the part of the debtor [would] result in a different result."). The court did not therefore require actual, physical delivery of the collateral. *Id.*

As noted at the outset, Judge Schmetterer of this court has already addressed surrender under section 1325 in light of facts very similar to those at bar, and did not require delivery as a condition to surrender. *Ross*, 359 B.R. at 698.

In *Ross*, Judge Schmetterer focused on the culpability of the debtor and on what was being retained by the debtor. *Id.* There, the debtor proposed to surrender a stolen vehicle. Among other things, the court found that filing a stolen vehicle report with the Chicago Police Department was evidence of a debtor's lack of bad faith. The record indicated that the *Ross* debtor "intended to surrender the vehicle and had no intent to keep it or recover it. Therefore, nothing in [the debtor's] bankruptcy filings necessarily infer or confirm that she is hiding the vehicle or is aware of its whereabouts." *Id.* at 699.

By reporting the car stolen, the debtor "deprived herself of any possible use" of the vehicle because the debtor would "not be able to obtain the appropriate vehicle stickers or license plates." *Id.* at 698. In the event the debtor "was caught driving the vehicle by law enforcement, she could incur various criminal penalties." *Id.*

As a result, Judge Schmetterer concluded that the debtor's surrender through the plan was sufficient to allow a discharge of a secured debt owed to the creditor without requiring physical delivery of the collateral to the creditor. *Id.* at 702.

## DISCUSSION

All of the foregoing begs the question: What by way of general rule should govern a court's consideration of a proposed surrender under section 1325? Surrender sometimes requires physical delivery and sometimes does not. It seems that each of the cases above presents a piece to a puzzle that must be assembled.

A.   <u>General Rule</u>

Put simply, surrender under 1325 requires at a minimum the surrender of all of the rights that the debtor has. BLACK'S LAW DICTIONARY 1673 (10th ed. 2014); 8 *Collier on Bankruptcy* ¶ 1325.06[4] (15th ed. 2005). Further, surrender requires physical delivery of the property to the holder of the secured claim unless that delivery is not possible through no fault of the debtor. *Smith*, 207 B.R. at 30. At the very least, the debtor must not stand in the way of the secured creditor taking possession of the property, *White*, 487 F.3d at 205, must not retain any rights to the property, *id.*,

10

and must at all times act in good faith, *Alexander*, 225 B.R. at 666, *Ross*, 359 B.R. at 69, *Robertson*, 72 B.R. at 4.

Physical delivery is required where a debtor has possession of the property at the date of the effective date of the plan, the property is capable of being delivered and such delivery is feasible. A debtor who exercises the surrender option but, despite being perfectly capable of physical delivery and such delivery being feasible, refuses to deliver the vehicle to the creditor has failed to surrender the vehicle. Such delivery includes not just physical delivery of the property, but in the case of vehicles, the surrender of the certificate title to the vehicle, the keys, etc., if the debtor possesses them. Retaining such items would constitute retention of some rights in the property, which is inconsistent with surrender.

What if, on the other hand, the property is capable of delivery but such delivery is not feasible? What if, for example, the property is in the debtor's possession but is in a remote location? In such instances, the only barrier to surrender is one that the parties could have anticipated in their contractual dealings. If the contract permitted the property's removal to that location, then the secured creditor bore the risk of an inconvenient delivery (though may, of course, be entitled to assert its costs in relation thereto). If the contract did not, it seems reasonable to keep the burden of delivery on the debtor.

If the debtor is in possession of the property on the effective date of the plan but the property is incapable of delivery (*e.g.*, a nonoperational vehicle), the debtor must at the very least make such property available to the creditor, including delivering the keys, title, etc. as discussed above. The debtor must, for example, allow the creditor reasonable access the property's locale if controlled by the debtor in order for the creditor to take possession of the property.

Property that is not capable of physical delivery because the debtor has lost possession of it may be surrendered as a legal matter without physical delivery if the record is absent evidence of the debtor's lack of good faith. The court could not, for example, reasonably allow a debtor to surrender a vehicle of which the debtor had allowed to be impounded due to the debtor's unpaid parking tickets. Such behavior would not satisfy the debtor's duty to comply with the surrender in good faith and would prohibit the debtor from surrendering the vehicle without physical delivery. On the other hand, if a vehicle is stolen through no fault of the debtor's, physical delivery should be excused.

B.   The "What Ifs"

Confirmation of a plan that includes the surrender of property without requiring physical delivery could, potentially, open Pandora's Box. It is therefore important to note that such circumstances require both the debtor and the creditor to act reasonably and in good faith.

As to the debtor, not only must it act in good faith in seeking surrender, it must continue to act in good faith vis-à-vis the property and the secured creditor. If, for example, a stolen vehicle is recovered and given over to the debtor, the debtor remains under an ongoing obligation to deliver that vehicle to the secured creditor in the manner discussed above. Should it be discovered that the debtor somehow concealed the property or otherwise acted without good faith, the debtor must face the consequences, which are not inconsiderable (in addition to breaching its contractual obligation under the plan which may result in dismissal of plan, the debtor may also have acted in a manner

that results in voiding or vacating plan confirmation due to fraud, or have subjected him or herself to criminal prosecution for bankruptcy fraud).

As to the creditor, it must act reasonably in receiving the surrendered collateral. If, for example, the creditor fails to take possession of collateral when tendered, it too must face the consequences. It must also be mindful of the limitations imposed on it by the Bankruptcy Code. If, for example, a creditor faces costs in collecting the surrendered collateral due to the debtor not physically delivering, such costs should be pursued in light of the pending bankruptcy, if at all. Similarly, if a creditor believes that the debtor is concealing property that the debtor has surrendered without delivery under its plan, the creditor must temper its actions with respect to the debtor in light of the protections afforded by the Bankruptcy Code. The automatic stay or discharge injunction, for example, may continue to protect the debtor, and the creditor must act accordingly.

C.   Application to the Facts at Bar

In this case, in accordance with section 1325(a)(5)(C) and the Debtor's proposed plan, the Debtor proposed to abandon the Vehicle to Santander in satisfaction of Santander's secured claim. The plan explicitly turns over all rights and interests in the Vehicle to Santander. The Debtor is not retaining any possessory rights to the Vehicle. The theft of the Vehicle prevents physical delivery, however. As such, the court must examine the Debtor's good faith.

Here, the Debtor maintained full coverage insurance on the Vehicle until the reported theft and reported the Vehicle stolen promptly after it was stolen in October of 2012. The Debtor filed a police report and an insurance claim and informed Santander as to both. The Debtor does not lack possession due to her own culpable behavior.

The failure of the Debtor to include the Vehicle in her schedules and the Plan does not appear to the court to be an indicia of lack of good faith. There appears to be no attempt by the Debtor to evade her responsibilities. The Debtor's failure to maintain insurance on or provide payments to Santander for a vehicle that she no longer possessed bears no weight against the Debtor's good faith in filing for bankruptcy and seeking to surrender the Vehicle. The Debtor indicates that she did not include Santander's secured claim in the Plan because she did not possess the Vehicle at the time of filing. As the Debtor did not have actual possession at the date of the petition and as Santander had been silent over the course of years, the Debtor's failure to understand that the bankruptcy case would require the Vehicle's inclusion is reasonable.

It is the court's conclusion, therefore, that the Debtor has sought bankruptcy relief in good faith and did everything within her power to surrender the Vehicle and comply with the requirements for plan confirmation under section 1325.

CONCLUSION

For the foregoing reasons, the Objection must be overruled. Under the facts at bar, the Debtor may surrender the Vehicle in compliance with section 1325(a)(5)(C) without physically delivering the Vehicle to Santander.

A separate order will be issued concurrent with this Memorandum Decision.

Dated: July 17, 2015

_____
Timothy A. Barnes
United States Bankruptcy Judge